IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLENN JUDGE                    :        CIVIL ACTION
                               :
        v.                     :
                               :
PARKER MCCAY                   :        NO. 07-975

MEMORANDUM

Dalzell, J.                                        July 18, 2007

           A lawyer has brought a breach of contract claim against
a law firm to which he referred a case, alleging that the firm
failed to pay him the referral fee it owed him under an oral
agreement.  Because the clients were in the dark about this
alleged agreement, the controlling jurisprudence obliges us to
deny the lawyer's claim.


I.  **Factual Background**

           Glenn Judge worked as an insurance adjuster for Amica
Insurance Company in southern New Jersey.  Jt. Stip. of Facts
("Stip.") ¶¶ 1-2.  Amica was a client of the law firm of Parker
McCay, P.A., and Judge worked regularly on insurance defense
cases with lawyers at that firm, including then-associate J.
Brooks DiDonato.  Id. at ¶¶ 3-5, 17.  Judge is also a lawyer,
though in early 2001 he was not an active member of any state's
Bar.[1]

---

[1] Judge has been admitted to practice in three states.
See Def.'s Mot. for Summ. J. ("Def.'s Mot."), Ex. 7 Pl.'s Answers
to Def.'s Interrogs. No. 9; see also Stip. ¶¶ 12-14.  In
Massachusetts, his license was active from May 1998 through July
2000, then inactive until May of this year.  In New Jersey, his
license was active from May 2001 through July 2003, then retired.
(continued...)

On January 11, 2001, Judge's neighbor, Timothy Carroll, was injured in an accident at a construction site in New York City.  Id. at ¶ 7.  Judge learned of Carroll's injuries and called DiDonato to ask if Parker McCay would be "interested in handling" the legal representation of Timothy Carroll and his wife, Cindy.  Id. at ¶ 8.  DiDonato spoke with Gary Piserchia, a certified civil trial attorney at Parker McCay who handles personal injury cases.  Id. at ¶ 16; Judge Dep. 6:12-15, May 25, 2007.  DiDonato then told Judge that the firm was interested in representing the Carrolls and faxed Judge a retainer agreement for the Carrolls to execute.  Judge Dep. 6:15-18, 25:9-19.

"[A]s a neighbor," Judge visited Timothy Carroll in a New Jersey hospital and delivered the retainer agreement between the Carrolls and Parker McCay.  Stip. ¶ 9.  During Judge's visit, Timothy Carroll signed the Parker McCay retainer agreement.  Id. at ¶ 10.  Judge delivered that document to Parker McCay.  Judge Dep. 6:19-24, 35:11-16.  Cindy Carroll later signed the retainer agreement, so the parties to it were Timothy and Cindy Carroll and Parker McCay.  See Def.'s Mot., Ex. 6 Agreement to Provide Legal Services, Mar. 7, 2001.  That contingent fee agreement said nothing about fee sharing with anyone.

On September 28, 2002, Parker McCay filed a lawsuit on behalf of the Carrolls in the Superior Court of New Jersey for Burlington County, captioned Timothy Carroll and Cindy Carroll v.

---

[1] (...continued)
His Pennsylvania license has been inactive since his admission in May of 2001.

Hampton Inns, Inc., et al., Docket No. BUR-L-003283-02.  Stip. ¶
11.  The jury "verdict and settlement" came to $1,894,744.  Id.
at ¶ 15.  After the jury verdict, Judge called the Carrolls and,
for the first and only time, discussed with them the matter of
him receiving a fee.  Judge Dep. 37:8-11.  Cindy Carroll asked
him if he was "trying to get money out of this case."  Id. at
37:6-8.

Parker McCay received $511,829.39 for its legal fees in
the Carroll's civil action.  See Pl.'s Mot. for Summ. J., Ex. I
Def.'s Resp. to Interrogs. No. 1.  According to Judge, Parker
McCay also received $25,140.00 for its work on Timothy Carroll's
workers' compensation claim.  See Pl.'s Mem. in Supp. of Mot. for
Summ. J. at unnumbered p. 6.

Judge demanded a referral fee of $175,637.80 from
Parker McCay, claiming they had an agreement that the law firm
would pay him a referral fee of one-third of what it received on
the third party case and one-fifth on the workers' compensation
matter.  Parker McCay denied that it had entered such an
agreement.  On February 28, 2007, Judge filed a complaint against
Parker McCay in the Court of Common Pleas of Philadelphia County,
which Parker McCay removed to our court three days later.  We
have diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

Before us now are the parties' cross-motions for
summary judgment, their responses thereto, and a joint
stipulation of facts.

3

## II.  Legal Analysis

The complaint states one claim for breach of contract of a referral fee agreement.  It is undisputed that the parties never entered into a written agreement for Parker McCay to share its fee with Judge, but they disagree as to whether they entered into such an oral agreement.  Notably, it is undisputed that no one discussed a referral fee with the Carrolls until after the verdict, nor did the Carrolls ever give written or oral consent to such an agreement.  Because of this, we need not address whether an oral fee-splitting or referral fee agreement actually existed, but shall assume that it did.  For the reasons discussed below, such a contract is unenforceable under New Jersey law.

### A.  Choice of Law[2]

We must decide which state's law to apply to the breach of contract claim.  Because we exercise diversity jurisdiction, we apply the choice-of-law rules of the state where we sit.

---

[2] Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, the Court must view the evidence, and make all reasonable inferences from the evidence, in the light most favorable to the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  The moving party bears the initial burden of proving that there is no genuine issue of material fact in dispute.  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986).  Once the moving party carries this burden, the nonmoving party must "come forward with 'specific facts showing there is a genuine issue for trial.'"  Id. at 587 (quoting Fed. R. Civ. P. 56(e)). The task for the Court is to inquire "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Liberty Lobby, 477 U.S. at 251-52; Tabas v. Tabas, 47 F.3d 1280, 1287 (3d Cir. 1995) (en banc).

<u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487 (1941). Pennsylvania's choice-of-law principles require us to apply the law of the forum that has the most interest in the problem and that is the most intimately concerned with the outcome. <u>Complaint of Bankers Trust Co.</u>, 752 F.2d 874, 882 (3d Cir. 1984). We consider the place of contracting, negotiation, and performance; the location of the subject matter of the contract; and the domicil, residence, nationality, place of incorporation, and place of business of the parties. <u>Berg Chilling Systems, Inc. v. Hull Corp.</u>, 435 F.3d 455, 467 (3d Cir. 2006).

The parties agree that New Jersey law applies, and they are correct. Judge and Parker McCay entered into the alleged oral agreement in New Jersey, which is also where the Carrolls executed the retainer agreement. Judge delivered the retainer agreement to Parker McCay at the firm's office in New Jersey, and Parker McCay filed the Carroll's lawsuit in that state. These contacts weigh overwhelmingly in favor of applying New Jersey contract law, so we apply that law as the New Jersey courts and legislature have declared it. Where the New Jersey Supreme Court has not ruled on an issue, we apply the decisions of the state's appellate courts, absent persuasive evidence that the New Jersey Supreme Court would rule otherwise. <u>See</u> <u>West v. American Tel. & Tel. Co.</u>, 311 U.S. 223, 236-37 (1940); <u>see also</u> <u>Connecticut Mut. Life Ins. Co. v. Wyman</u>, 718 F.2d 63, 65 (3d Cir. 1983).

### B.   <u>The Breach of Contract Claim</u>

Parker McCay contends that, even if there were an oral agreement for a referral fee, it would be unenforceable because the Carrolls were not notified of, nor did they consent to, the payment of any referral fee, as the New Jersey Court Rules and Rules of Professional Conduct require.  Judge contends that Parker McCay cannot use his failure to get the Carroll's consent as a "shield" to avoid paying him a referral fee.

New Jersey Rule of Professional Conduct 1.5(e) ("R.P.C. 1.5(e)")[3] addresses lawyers' fees and provides that:

> Except as otherwise provided by the Court Rules, a division of fee between lawyers who are not in the same firm may be made only if:
>
> > (1) the division is in proportion to the services performed by each lawyer, or, by written agreement with the client, each lawyer assumes joint responsibility for the representation; and
> > (2) the client is notified of the fee division; and
> > (3) the client consents to the participation of all the lawyers involved; and

---

[3] Even if Judge was unaware of New Jersey's R.P.C. 1.5(e) because he was not licensed in New Jersey when the alleged agreement was formed, Massachusetts has a similar client consent requirement:

> A division of a fee between lawyers who are not in the same firm may be made only if, after informing the client that a division of fees will be made, the client consents to the joint participation and the total fee is reasonable. . . .

Mass. R. Prof. Conduct 1.5(e).

6

(4) the total fee is reasonable.

New Jersey Court Rule 1:39-6(d) ("Rule 1:39-6(d)")
provides an exception to certain provisions of R.P.C. 1.5(e).  It
allows certified attorneys, such as Piserchia, to divide a fee
with a referring lawyer without regard to whether the division is
proportional to the services each lawyer performed.  Rule 1:39-
6(d) states in relevant part that:

> A certified attorney who receives a case
> referral from a lawyer who is not a partner
> in or associate of that attorney's law firm
> or law office may divide a fee for legal
> services with the referring attorney or the
> referring attorney's estate.  The fee
> division may be made without regard to
> services performed or responsibility assumed
> by the referring attorney, provided that the
> total fee charged the client relates only to
> the matter referred and does not exceed
> reasonable compensation for the legal
> services rendered therein. . . .

Rule 1:39-6(d) does not supersede all the requirements
of R.P.C. 1.5(e), as the New Jersey Supreme Court Advisory
Committee on Professional Ethics ("New Jersey Advisory
Committee") has made clear.  See NJ Unauth. Prac. Op. 694, 12
N.J.L. 2134, 2003 WL 22697187 (N.J.Adv.Comm.Prof.Eth., Nov. 3,
2003).  In a formal opinion issued jointly with the Committee on
Attorney Advertising, the New Jersey Advisory Committee reviewed
a proposed fee sharing arrangement between two firms and, citing
R.P.C. 1.5(e)(2), found that the arrangement "lack[ed] the
requirement of client consent."  2003 WL 22697187, at *3.  The
two committees explained that:

> In the case of certified attorneys, R. 1:39-
> 6(d) eliminates only the requirement that the

7

> division of fees be in proportion to the
> services performed by each lawyer, or that
> each assumes joint responsibility for the
> representation under RPC 1.5(e)(1).  The
> conditions of client consent and
> reasonableness of the total fee remain
> relevant.

Id. (emphasis added).[4]

Thus, lawyers who agree to share fees pursuant to Rule 1:39-6(d) must have the client's informed consent to the arrangement.  Here, it is undisputed that Judge did not timely inform the clients or ever obtain their consent to the alleged fee referral agreement.

Judge nevertheless contends that the agreement is enforceable.  The New Jersey courts, however, take a dim view of fee-sharing agreements that plainly violate the Rules of Professional Conduct.

In the recent decision in Goldberger, Seligsohn & Shinrod, P.A. v. Baumgarten, 875 A.2d 958 (N.J. Super. Ct. App. Div. 2005), a lawyer who represented the child of a deceased sued another lawyer who represented the deceased's estate in a

---

[4] Not all lawyers embrace a fee-sharing system that does not require proportional sharing of fees based on the lawyers' work or their joint responsibility for a case.  As Henry S. Drinker, author of Legal Ethics, put it:

> It makes the law too much of a business if
> you are practicing the way you would as a
> broker.  The lawyer is not supposed to get
> paid for anything but the legal services that
> he renders, and selling a man a client is not
> a legal service.  I think it is beneath the
> dignity of the profession to take money for
> something that is not a legal service.

7 U. Fla. L. Rev. 433, 434 (1954).

wrongful death action, alleging, <u>inter alia</u>, that the defendant
breached a fee-sharing contract whereby the plaintiff was to
receive twenty-five percent of the fee earned in the action the
defendant brought on behalf of the estate.  The trial court
granted defendant's motion for summary judgment, and the
plaintiff appealed.  The appellate court upheld the judgment in
favor of the defendant for the breach of contract claim, agreeing
with the trial court that the plaintiff was not entitled to
relief on the breach of contract claim because the alleged
agreement failed to conform to R.P.C. 1.5(e).  <u>Id.</u> at 963.  Among
the alleged agreement's deficiencies, the appellate court noted
that:

> [T]here is no evidence that the clients were
> notified of the alleged fee division, nor is
> there any evidence that the clients consented
> to the participation of all of the lawyers
> involved.  In the circumstances, the judge
> correctly found that the alleged agreement
> did not satisfy the requirements of *R.P.C.*
> 1.5(e).  Relief could not be awarded for a
> breach of the alleged agreement because it
> was contrary to law. . . .

<u>Id.</u>

Thus, under <u>Goldberger</u>, where a lawyer seeking payment
from an alleged fee-sharing agreement gives no evidence that the
clients consented to it, the lawyer cannot prevail on a breach of
contract claim.  This rule applies with equal force where a
lawyer invokes Rule 1:39-6(d) because the New Jersey Supreme
Court Advisory Committee on Professional Ethics, as noted, has
made clear that Rule 1:39-6(d) does not eliminate R.P.C. 1.5(e)'s

requirement that lawyers inform clients of fee-splitting agreements and obtain their consent.

Judge has not cited any New Jersey jurisprudence that undermines Goldberger's authority as a predictor of New Jersey law. He points to several cases in other jurisdictions,[5] but even if some states will in certain circumstances enforce fee-

_____

[5] For instance, Judge cites Saggese v. Kelley, 445 Mass. 434 (2005), where the Massachusetts Supreme Judicial Court, addressing a state rule of professional conduct similar to New Jersey's R.P.C. 1.5(e), found that a fee-sharing agreement between lawyers that did not comply with disciplinary rules was "not necessarily unenforceable." Id. at 441. Notably, though, that court found it "significant" that the client was informed of, and consented to, the fee-sharing agreement toward the end of the attorney-client relationship, thereby ratifying conduct that otherwise would constitute a breach of fiduciary duty. Id. at 442. Here, the Carrolls never ratified the alleged fee-sharing agreement.

Judge also cites several other cases, none decided under New Jersey law and all differing from our case. In Freeman v. Mayer, 95 F.3d 569 (7th Cir. 1996), the referring attorney fully disclosed the fee-sharing arrangement with the clients, who then consented to the joint representation and the fee arrangement, id. at 570-71, 575. The court enforced the agreement between the lawyers even though they did not enter into a written agreement with the clients concerning the joint representation, as Indiana Rule of Professional Conduct 1.5(e) required. Id. at 574-75. Unlike the referring attorney in Freeman, Judge never bothered to disclose the alleged fee-sharing agreement to the Carrolls or obtain their consent. In Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 188 F. Supp. 2d 115 (D. Mass. 2002), the court, applying Massachusetts jurisprudence, refused to void a fee-splitting agreement because the lawyers had not informed the clients of the agreement, id. at 131. The court noted that the case did not implicate referral fees because the referring lawyer had worked on the tobacco cases at issue for over a decade. Id. Finally, the court in Potter v. Peirce, 688 A.2d 894 (Del. 1997), held that a lawyer could not assert his non-compliance with his state's rules of conduct as a defense to an agreement with an out-of-state referring lawyer who was not charged with compliance with that rule or a similar rule in his own jurisdiction, id. at 897. In contrast, New Jersey and Massachusetts both required Judge to obtain the Carrolls' consent to the alleged agreement.

sharing agreements that violate their rules of professional conduct, as a court sitting in diversity we are not free to apply their jurisprudence where, as here, New Jersey law governs and there is no evidence that the New Jersey Supreme Court would follow other states' reasoning contrary to Goldberger and the New Jersey Advisory Committee.

When Judge brought the Parker McCay retainer agreement to the hospital, the Carrolls then and there were entitled to know why Judge was recommending that law firm, particularly if one of the reasons was Judge's personal financial interest. Such information was unquestionably relevant to the Carrolls' informed decision-making about legal representation. Indeed, the New Jersey Rules of Professional Conduct ensure that the Carrolls should have received that information. But Judge chose not to reveal it, a decision the New Jersey courts do not reward.

New Jersey has elected not to enforce contracts that violate the state's Rules of Professional Conduct and Court Rules, as the alleged oral agreement here does. If New Jersey will not enforce fee-sharing agreements entered into without client consent, we cannot.

## III.  Conclusion

For the reasons discussed herein, we find that the alleged oral agreement for a referral fee is unenforceable. We shall therefore grant the motion for summary judgment of Parker

11

McCay and deny that of Glenn Judge.  An appropriate Order and Judgment follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLENN JUDGE                    :        CIVIL ACTION
                               :
          v.                   :
                               :
PARKER MCCAY                    :        NO. 07-975


ORDER

AND NOW, this 18th day of July, 2007, upon
consideration of plaintiff's motion for summary judgment (docket
entry # 17), defendant's motion for summary judgment (docket
entry # 16), the parties' responses to the motions and their
stipulation of facts, in accordance with the accompanying
memorandum, it is hereby ORDERED that:

          1.   Plaintiff's motion is DENIED;

          2.   Defendant's motion is GRANTED; and

          3.   The Clerk shall CLOSE this case statistically.

                         BY THE COURT:


                         /s/ Stewart Dalzell, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLENN JUDGE                    :        CIVIL ACTION
                               :
          v.                   :
                               :
PARKER MCCAY                   :        NO. 07-975

<u>JUDGMENT</u>

        AND NOW, this 18th day of July, 2007, for the reasons
articulated in the accompanying Memorandum and Order, JUDGMENT IS
ENTERED in favor of defendant Parker McCay and against plaintiff
Glenn Judge.

                               BY THE COURT:


                               <u>/s/ Stewart Dalzell, J.   </u>